Case is Case No. 4-18-0513, Pekin Insurance Company v. Twin Shores, LLC, et al. And, Counsel, I'd ask that you step up and state your name for the record. We'll start with Counsel for the appellant. Good morning, Your Honors. Good morning. At this time, I just want you to state your name for me, if you could, please. I'm Scott Howey. All right. And for the appellee? All right. Thank you. You may proceed, Counsel. Thank you, Your Honor. Again, I am Scott Howey, and I represent the plaintiff at the last, in this case, the Pekin Insurance Company. May it please the Court. The parties essentially agree that the duty to defend the additional insured depends upon the potential for an allegation of vicarious liability in the allegations of the underlying complaint. But we differ over what it means to satisfy that potential and what is required to satisfy that notion of potential. And that difference reflects a larger split in Illinois law over whether the potential covered claim must actually be in the allegations themselves or if the allegations of the complaint need only make it possible for a plaintiff to allege such a claim. This appeal turns upon the question of potential and what it means in the insurance coverage context, which of these understandings of potential fits into the well-established law concerning the standard for the duty to defend. This Court should recognize that the duty to defend standard, because it looks to the allegations of the underlying complaint before comparing them to the provisions of the insurance policy, requires that those allegations must actually appear in the underlying complaint. The underlying allegations, that is, must contain a potential vicarious liability claim, not merely leave it open as a theoretical possibility. The underlying complaint here might not foreclose the possibility of some vicarious liability claim, but it doesn't allege one either. And without those allegations, there is no coverage under the additional insured endorsement. And this judgment against Pekin should be reversed. Mr. Howey, in count one of the amended complaint, that's the wrongful death count against Twin Shores. In paragraph five, it begins that defendant Twin Shores by and through its agents, servants, and employees were guilty and then identifies the facts or omissions. How should we interpret the word agents in that paragraph in light of our responsibility to determine whether this alleges a potential claim of vicarious liability? Your Honor, the Court should examine that language. And that language, of course, is what's key here. It's what we're really talking about when we talk about the allegations of the complaint. The allegation refers to the agents, servants, and employees. And in focusing on the notion of agents, the Court can't just look at that language by itself. Look at that language in the context of the sentence where it appears. That Twin Shores by and through its agents, servants, and employees was then and there guilty, guilty of one or more of the following careless and negligent acts. So it isn't simply a matter of whether Twin Shores can be held legally liable for Henson Electric's negligence or anyone else's negligence on a vicarious liability theory. It's whether Twin Shores actually committed those negligent acts. Now, it may have actually committed them through other persons, perhaps through individuals. Any corporation can only act through individuals, sometimes agents, sometimes servants or employees. It may act through individual persons. It may act through other legal entities who themselves are acting through individual persons. But any corporation that acts through another party, whether individual or not, is still acting on its own behalf. It is acting itself. It is its own actions. And that is very different from the notion of being legally liable for something yet still being blameless or innocent of the actual act. A claim of vicarious liability might also involve an agent, but it wouldn't involve guilt. And that's what's key about the use of the word agency alongside servants and employees. Well, how would a jury instruction read that alleged Twin Shores was responsible? The jury was to find them responsible for the actions of Henson and that Henson's employees were the agents acting as the agents of Twin Shores. Wouldn't it say something like the Twin Shores was guilty as a result of negligence, as a result of the actions of Henson's employees? I think such an instruction could be drafted to read that the Twin Shores would be, is to be held responsible or can be held responsible for the actions of Henson Electric, even if it itself was not the one who committed them. That would be the case, I'm sorry, that would be the case in a vicarious liability situation, which is not what's here. In this case, if this case were to go to trial, the jury instruction would read that the acts of Twin Shores include those acts of Henson Electric. Assuming that the agency were to be proved. Or if it were to be a question of fact, if that was something for the jury to determine whether that relationship actually existed, then there are pattern instructions that cover the question of agency. But the question would come down to the question of whether Henson Electric had done something on the one hand, and whether Twin Shores had done something. And there may be complicated questions that need to be explained to the jury as far as which acts of which party are attributable to which party. Counsel, I'm sorry, in the context of your instructions, would there then need to be a further instruction or potentially a definition with regard to the manner of control that Twin Shores may have, well, just the manner of control, just to further delve into when agency potentially could be found? I think there could be questions, jury instructions going to that issue in both cases. Whether we were talking about what we have here without vicarious liability, or a case that did clearly allege some sort of vicarious liability in which even if the jury were to find, for instance, that Twin Shores did nothing wrong, was completely innocent of any negligence or wrongdoing, and yet could still be found to be responsible in a legal sense for what Henson Electric had done. And that is the distinction there. It's really, and it does come down, I think, to the question, to the language of being guilty of the acts or omissions that are alleged in paragraph 5 of that count. The standard that's set forth in the very cases that Twin Shores cites in this case, there are cases, many cases, of course, that involve Pekin's additional insured endorsements, some similar to this one, all similar to this one, some identical. But one of the cases, the cases that the Twin Shores relies upon most heavily are the Sentex Homes case, the CSR Roofing case. Those set forth a standard that requires not just the broader standard for any coverage case of comparing the language of the underlying complaint to the provisions of the policy, but specifically finding that there must be a potential for finding that the named insured was negligent, and second, there must be a potential for holding the additional insured vicariously liable for that negligence. The first of those prongs is not disputable in this case. There clearly are allegations in the underlying complaint that both Twin Shores and Henson Electric were liable for their own negligence. But it's those allegations and the fact that they are so clear that set up the potential for a finding that the named insured was negligent, and that is the potential that satisfies that first prong. It's the second prong that the allegations are inadequate to satisfy. There's no allegation that the additional insured is vicariously liable for the negligence of the named insured. No allegation that there was anything that made the additional insured legally responsible for the named insured's facts and omissions, despite being factually blameless for them. And without some allegation to that effect, there's no potential for vicarious liability. If, Counsel, if in the same paragraph 5 that we were looking at before, if instead of the word agent the allegation was Henson Electric, then there would be no doubt that that would be an allegation of alleging vicarious liability. If that were the only thing that were changed, Your Honor, I respectfully suggest that would not change anything about this analysis. It would still be saying that Henson Electric was guilty of these things. Or I'm sorry, Your Honor, perhaps I misunderstood your question. Agents insured by and through Henson Electric was. No, I was right the first time. It doesn't change anything because it doesn't change the notion of guilt. It still says, we still would allege that Twin Shores acting through someone else, but nonetheless acting itself, was guilty. That is, what would make a difference would be if the allegation had said that Twin Shores is vicariously liable or is responsible for the negligence of Henson Electric. Or in some fashion communicated that the liability was to be imposed against Twin Shores, despite the fact that it was blameless for the negligence of the other party. And this is exactly the opposite. How would you plead something if there was a shared responsibility, which frankly it would seem reasonable to view the pleadings in this case  And if you compare count one and count two, the allegations of negligence, they're identical. And they relate to the failure to provide a safe work environment. They plead that in paragraph three of each count, the retention of control and authority over the construction. That would seem to leave open the possibility that a jury, the plaintiff is going to argue that potentially this was a shared responsibility between the two. And even though Twin Shores might be found directly liable or negligent, aside the insurance coverage issue here, but notwithstanding that in that event Twin Shores might be found negligent through the actions of its own employees, the jury could also find a shared responsibility and find that Henson Electric's employees were responsible and find that Twin Shores was vicariously liable for the actions of Henson's employees. True? Well I think that leads over into the question of what is being alleged and what might be later alleged. Or what could have been alleged. Or, to use Your Honor's question, what might get argued at trial. But that's a different question than what it is that is looked to in determining whether the insurance coverage is provided. There may be some sense that at the trial court, if this complaint goes to trial in this form, there may be some sense that it's all kind of the same thing. It all bleeds together. It all is difficult to distinguish. And they do sound similar in a lot of ways. But under your theory here as presented on appeal, the allegations in the underlying complaint would have to be sufficiently clear that we could foreclose from consideration a potential vicarious liability claim being asserted by plaintiff against Twin Shores for the acts of Henson's employees. It would need to be apparent from our review of the complaint. That's correct. And it would need to be clear enough on the face of the complaint that it would be appropriate to put that to a jury. Now, is it possible that there might be an amended complaint in which the same facts could make for vicarious liability? I suppose that's possible. It's a theoretical possibility. It's a potential in that sense. But the potential that's referred to in the cases that require the potential for a covered claim, require that potential to be in the allegations of the complaint. Not to be something floating in the air that might someday be subject of a complaint, that might perhaps after judgment, complaints can be amended. What we're dealing with at the coverage stage is what's in the complaint. And is that potential in the complaint? The cases that speak of it in broader terms, the CSR cases, the Centex Holmes cases, respectfully suggest that those do not correctly look to the allegations of the complaint. They look outside the complaint, beyond it, to suggest that the potential is something other than what's on paper, other than what's within the four corners of the complaint. And those cases are more broadly thinking of what potentially could be alleged. But when you talk about what potentially could be alleged, I submit, you are automatically going beyond what actually is alleged. And it's what actually is alleged that drives the coverage inquiry. That is coverage case law going back decades. And it is only in the cases that deal with this additional insured endorsement, in which we are discussing the potential for a claim of vicarious liability, in a set of facts that might seem to suggest that it could be given rise to, those are the cases in which the courts have gone beyond the pleadings, and in contravention of the well-accepted standard that drives coverage inquiries, and has done for years. Let's fast forward to trial, because I think it's another way of answering this same question. Evidence has been presented. Plaintiff wants to have the jury instructed on the vicarious liability of Twin Shores. And Twin Shores would be arguing that that issue hadn't been framed by the complaint, and therefore was improper, based on the way the pleadings are drafted here, and the amended complaint. Would plaintiff be precluded from getting that instruction? I believe plaintiff should at that point in the trial. Obviously, if it is true that vicarious liability has not been explored, there's no reason to have explored it, based on what is in the complaint. Perhaps an overly, I shouldn't say overly diligent, but an overly aggressive counsel for Twin Shores might investigate that as a possibility, but can't be blamed for not having done so, when there is no allegation of that effect here. And no suggestion that the relationship between the two parties might give rise to that sort of claim. The standard for... I'm listening, and you seem to be arguing that in drafting the complaint, there needs to be these magic words, and then in reviewing the abundance of authority that's been cited, courts don't seem to find that the pleadings have to state the magic words of vicarious liability. We could look to the intent of the complaint, and things of that nature to determine what's being implied. So, help me. I certainly don't mean to suggest that there are any magic words, including the words vicarious liability. Not that it wouldn't help to include those words, and that would be useful. But they're not essential. I don't mean to suggest that they are. What's necessary, though, is their substance, and the notion that Twin Shores is to be held liable, or the allegation that it must be held liable because of its relationship to a party, because its relationship to a party makes it legally responsible for that party's accident omissions. And that's what's not contained in these allegations. And you're going beyond that by saying that not only is it not contained, but then the use of the word guilty suggests the opposite. Exactly. It's the actual guilt that is alleged here. The notion of vicarious liability involves the notion of being legally responsible for something you didn't do. Legally responsible despite being innocent or blameless. And the allegations, particularly in paragraph 5, say exactly the opposite. They say that Twin Shores was guilty of these things. Now, Twin Shores is a company. I believe it's a corporation, or some corporate entity that can't act on its own. No company can. It acts through its agents, servants, and employees. But acting through them is not the same thing as being legally responsible for their actions if you haven't committed them, if that entity hasn't committed them itself, isn't actually to blame for them, or guilty. Does Henson's status as an independent contractor impact or inform our analysis on this issue in any way? It does. It's outside the complaint, of course, but it informs the notion of what that relationship was and further diminishes the idea that the Twin Shores could in fact be vicariously liable. That's a factual issue that goes to that question. It certainly is to the advantage of Pekin's argument. But what's critical is the allegations. I can't stress enough. And the allegation that the party was in fact guilty of these alleged acts and omissions is what takes it away from the notion of vicarious liability. That's direct liability. That's guilt. And that is inconsistent with the notion of vicarious liability. And so is it unreasonable to say, well, yes, they're guilty because they're responsible for the actions of this other party, even if they're not at fault, but that still makes them guilty because of that responsibility. Is that a reasonable interpretation of the complaint? Disrespectfully, Your Honor, it's not. To be legally responsible for something is a different enough concept that it should be pleaded differently in the complaint. And I stress it. It's not too much, I think, to ask an underlying plaintiff to make that allegation if it is in fact supportable. And this is not one of the cases. There are some in which the courts say – I see my time has expired. Please continue your thought. There are cases in which the injured party was the employee of the named insurer. The courts say, well, of course he didn't sue the named insurer. He can't under workers' comp. It's his employer. I submit that that's not enough of a reason because he could still have alleged in those cases that the employer, the named insurer, was negligent and the additional insurer was vicariously liable for it. But in this case, we don't even have that concern. The injured party, the decedent, was an employee of neither of the parties to the contract, in fact did sue them both, and makes very clear and distinct allegations of negligence, of guilt, to use his own words in the complaint, guilt, against both of them. But the named insurer is alleged to be guilty of its own acts of omission. The additional insurer is alleged to be guilty of its own acts of omissions, and there are no allegations that connect them or cross over in any sort of vicarious sense. If you have to address any further questions the court might have, but in the event there are none, I simply ask the court to reverse the judgment and enter judgment for Pekin. And you will have additional time on rebuttal if you'd like to take advantage of that. Thank you. Mr. Zetkowski? Peter Zetkowski for Twin Shores Management. Thank you so much for giving us this opportunity to discuss with you this issue. I want to just answer a question that you asked about the jury instruction. And if at the time of jury instruction, the plaintiff's attorney wanted to ask for a vicarious liability instruction against Twin Shores, I believe if they go to the court and show the judge that they have evidence presented during the course of trial, they certainly can amend the complaint even after the trial is over, but they can ask for that jury instruction. So I think that can be done. In answer to your question, I think that if the evidence is presented to the jury, that suggests possible vicarious liability. That seems to imply that you think that as currently phrased, the amended complaint wouldn't allow for a vicarious liability instruction. No, I think it would. I look at paragraphs 3 and 5 of both counts 1 and 2, and I think the allegations are sufficient. I know the concept that Pekin's bringing here is we would like this more narrow view of the interpretation of this contract, where you're really just sticking your eyes on the four corners of the pleadings and the insurance contract. That's it. Nothing else. And I think it's really myopic, and I also think it goes beyond, it doesn't take into consideration the real world. It's just a really narrow view of a contract that they drafted, sold to their insurers. Their insurance came to them. I mean, I think in the real world, you've got to look at my client and what happened. My client wants to build this structure. They go to Henson to do the electric. They agree on a contract. My client wants to be protected against anything Henson does that hurts somebody. They can't add an indemnity clause because the anti-indemnity statute for construction cases prohibits them from adding that. So the only real option they have, and it's done all the time in Illinois, is that the general contractor says to the sub, get your CGL policy, but I want you to make sure you add me as an additional insurer. Not a certificate holder, but an actual additional insurer. There's no dispute that they are an additional insurer here on this policy. But that's the way, that was the intent of those two parties to the contract. That was their intent for Twin Shores to have protection. So then Henson goes to his agent, and he says to the agent, I need additional insurer. So he comes away with the certificate of insurance, which shows Twin Shores. He hands it to Twin Shores. Twin Shores believes, okay, I'm covered. If Henson screws up, I'm covered. And Henson thinks the same thing. Now we get to a stage in the beginning of the discovery, and we find out Pekin's saying, oh, wait, there's all these little things that preclude it. And so Pekin is narrowing and rewriting its contract. My request for denial of the appeal is not to expand the insurance contract, as counsel argues. He's saying that our interpretation using the cases that we cite, Lexington Station, Centex Home, AAA1 Masonry, and CR Roofing, somehow expands that contract, and it doesn't. What these cases, particularly Lexington Square or Lexington Station does, is really refine the extent of the insurance contract and its responsibility for coverage here. I feel that the view given, and I think, by the way, the reliance by the trial court of the Lexington Station case, as well as this particular insurance contract, this particular complainant law or amended complainant law, was spot on. I think the correct law was applied to the facts of this case, and I do believe the judge made a fair ruling given the law. And so I believe that, you know, his ruling should be affirmed. But I don't think we have to adopt this narrow, myopic standard that Pekin is suggesting. After all, you know, if there is an ambiguity, and I think there is an ambiguity here, what is the extent of coverage? I think that ambiguity has to be drawn in favor of the drafter of the insurance contract, which, of course, is Pekin. So even though they rely on united contractors, I mean, even, you know, even when Pekin says, well, you can't really look beyond the complaint. Its own case, Pekin v. Wilson, our Illinois Supreme Court said in Wilson, page 460 to 461, that the court should look beyond the underlying complainant law. It doesn't need to wear judicial blinders, and it may look beyond the complaint and other evidence appropriate when you're reviewing a case for summary judgment, a motion for summary judgment. So the Wilson case cited by Pekin does permit the trial court to look beyond the mere four corners of the complaint into other documents. And so what we suggested, Twin Shores suggested, is look at that contract, look at the intent, and look at the potential of what the evidence is going to be here. I know counsel mentioned that this decedent was not an employee of Henson. And the facts that will come out when the plaintiff decides to do discovery is that Henson controlled this man. This man was used by Henson from a temporary agency, PLB, I believe was the name of the temporary agency. The decedent's estate sued PLB because PLB paid him. But the truth of the matter is, when he was working on this site, Henson was in charge of telling him where to go, when to go, and everything. So there's a great chance that Henson is going to bear some responsibility here. Pekin's going to bear responsibility directly. But, you know, Pekin had this case earlier. They should have done some investigation, figured out, you know, before filing a deck action. But what are the facts? Is there some potential vicarious liability here? They could have found that out. But the Wilson court also says that you must construe the insurance policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the insurance contract. And so that's what I argued on behalf of Twin Shores. What was the intent of these two corporate enterprises when they entered into a contract, and then the intent of Henson going to Pekin saying, give me a CDL policy and add them as an additional insurer? The whole intent was to protect the interests of Twin Shores if Henson screwed up. Does this, our view of the pleading suggests that because the plaintiff specifically says Twin Shores on paragraph 3 and 5, through its agent services employees, creates that potential. Creates that potential, even if it's not borne out, but creates that potential of vicarious liability. And so that should be sufficient for the application of coverage here for an additional insurer, under the specific policy that is being used here in this case, which is identical to the language used in the Lexington Square case. And of course the pleadings in Lexington Square by Plaintiff Cotello were almost verbatim, the same pleadings that we find here in this case in the underlying complaint. What about the use of the word guilty and opposing counsel really focused on that? What's your response to that? My response is it's a non-issue. Guilt is determined later. I don't know how a plaintiff, you know, here's the thing. As pointed out in Lexington Square, the parties to a lawsuit aren't in charge of how a plaintiff decides to word the complaint. They have no idea, first of all, if this complaint is going to be filed and in what language. So that could never be predicted when both Henson and Twin Shores entered into their contract and when Henson went to PICA and said, give me a CGL policy for additional insurer. How could anyone ever sort of predict that the word guilty was going to be in a complainant law if the complainant law was filed? So to ask, to suggest that maybe somebody's contract, either the contract between Henson, and Twin Shores be modified to take that into consideration, I don't think that's real world. Do you even understand the emphasis of being placed on the word guilty here in terms of negating the possibility of an allegation of vicarious liability? I'll be honest, I don't. Because I don't really see what impact that would have on this case when the issue of coverage is on what the pleadings say, what the documents outside the pleadings say, and the insurance contract as a whole. I don't think it has really much bearing on this. Well, I mean, I guess he's saying the pleading is saying not that, the pleading is saying you did something, and you're guilty of doing this, you intentionally, well not intentionally, but you did something and you're guilty of it, versus saying someone that you're responsible for, that you have to be held accountable for their actions did something. I mean, that's the distinction I'm getting from counsel's argument. Well, taking that into consideration, but you still have the paragraph three, which talks about the actions of Twin Shores to its agents, servants, and employees. I still think there's the potential, there's the possibility that the facts that are elicited during the course of discovery could establish a principal agency relationship between Twin Shores and Henson. Now, we don't know that for a fact, but that's part of that potential counsel talked about in terms of what is the definition of potential that was referred to heavily in the reply brief on appeal. And I think that is part of that potential. So if that potential exists for a principal agency relationship, then you've got a potential for a vicarious liability instruction. Hence, although the words, the magic words, vicarious liability aren't set forth in the complaint, the potential exists there based on these pleadings. And so, therefore, there should be coverage. Ladies and gentlemen, I have nothing else to say. Thank you, Your Honor, for your time. Thank you, counsel. Any rebuttal, Mr. Howey? May it please the Court. Respectfully, if the mere relationship of being an agent were enough for a potential for claim of vicarious liability as potential is understood in the case law concerning coverage, then there would be virtually no case that wouldn't meet that standard. That's virtually no standard at all. The standard for a duty to defend is admittedly broad, but it's not so broad as to require nothing other than an allegation of that relationship. What's required is an allegation of some kind of reason for responsibility for something for which one is blameless. And that is what makes for vicarious liability. With respect to counsel's suggestion that parties couldn't have predicted how the complaint would have been written, actually that is what insurance companies and parties who purchase insurance are always in the business of doing, is determining what claims are possible and what claims are to be covered. And it's not myopic and it's not narrow to limit the coverage to the coverage that is provided for and stated in the policy. This policy, particularly with respect to the additional insured endorsement, that endorsement provides that the additional insured is to be insured and is to be covered, but only for vicarious liability. It's very clear in using that language. Vicarious liability that is imputed from the actions of the named insured. So the coverage that is provided to the named insured, the coverage follows the liability. In some cases, it follows the liability of the named insured to the additional insured. In those cases in which underlying plaintiffs claim, make claims that the additional insured is responsible for something the named insured did or failed to do. That's vicarious liability. That's what the policy explicitly does cover. Not in any myopic or narrow sense. It is true that guilt is to be determined later. Guilt, if that sort of guilt is to be determined, is determined, is found by a jury, that is something that is for, is relevant to the duty to indemnify. And that, again, is kind of the distinction between the notion of potential and the notion of proof. Until some of the recent cases dealing with additional insured endorsements, the notion of being, something being potential in the complaint, or potentially covered, and therefore triggering a duty to defend, is used in juxtaposition to the notion of proof. For the duty to defend, it need only be alleged in the complaint. I say need only be alleged, but it does need to be alleged there. In order to be indemnified, it needs to be proved. That's broader. But the notion of potential is relevant to insurance coverage in the sense that it only has to be alleged and therefore potentially proved. In this case, the notion of vicarious liability is not even potentially alleged. The distinction of guilt is key to that understanding. And the allegation that Twin Shores was, in fact, guilty of doing something or failing to do all the several things that are alleged in that paragraph five, sets it apart from vicarious liability. Twin Shores is directly alleged to have committed these negligent violations of a duty that it owed. That is very different from the notion of being legally responsible for something that it didn't do, that someone else did, and yet it's still responsible for it because of some legal relationships or documents. I would be happy to address any further questions the Court might have, but I would again request that the Court reverse the judgment in favor of Twin Shores and the judgment in favor of Deacon. Thank you, counsel. We'll take this matter under advisement and be in recess.